UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x

IMAN MCINTOSH,

                                       Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER HAROLD TAYLOR, SERGEANT HONG CHEN, POLICE OFFICER CHONG YI, POLICE OFFICER JAWAD JAVED, POLICE OFFICER JAMES KELLY, POLICE OFFICER JASON RAGOO, SERGEANT RONALD WARNETT, SERGEANT MICHAEL ELDERBAUM, and JOHN/JANE DOE # 1 - 20,

                                       Defendants.
---------------------------------------------------------------------------x

SECOND AMENDED COMPLAINT

14 CV 0051 (FB) (RML)

JURY TRIAL DEMANDED

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

## PARTIES

6. Plaintiff Iman McIntosh ("Plaintiff" or "Ms. McIntosh"), an African-American female, is a resident of the County of Queens, City and State of New York.

7. Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. At all times relevant herein, Defendant Police Officer Harold Taylor ("Taylor") was an officer, employee, and agent of Defendant The City of New York.

11. At all times relevant herein, Defendant Taylor was acting within the scope of his employment with Defendant The City of New York.

12. At all times relevant herein, Defendant Taylor was acting under color of state law.

13. Defendant Taylor is sued in his individual and official capacities.

14. At all times relevant herein, Defendant Sergeant Hong Chen ("Chen") was an officer, employee, and agent of Defendant The City of New York.

15. At all times relevant herein, Defendant Chen was acting within the scope of his employment with Defendant The City of New York.

16. At all times relevant herein, Defendant Chen was acting under color of state law.

17. Defendant Chen is sued in his individual and official capacities.

18. At all times relevant herein, Defendant Police Officer Chong Yi ("Yi") was an officer, employee, and agent of Defendant The City of New York.

19. At all times relevant herein, Defendant Yi was acting within the scope of his employment with Defendant The City of New York.

20. At all times relevant herein, Defendant Yi was acting under color of state law.

21. Defendant Yi is sued in his individual and official capacities.

22. At all times relevant herein, Defendant Police Officer Jawad Javed ("Javed") was an officer, employee, and agent of Defendant The City of New York.

23. At all times relevant herein, Defendant Javed was acting within the scope of his employment with Defendant The City of New York.

24. At all times relevant herein, Defendant Javed was acting under color of state law.

25. Defendant Javed is sued in his individual and official capacities.

26. At all times relevant herein, Defendant Police Officer James Kelly ("Kelly") was an officer, employee, and agent of Defendant The City of New York.

27. At all times relevant herein, Defendant Kelly was acting within the scope of his employment with Defendant The City of New York.

28. At all times relevant herein, Defendant Kelly was acting under color of state law.

29. Defendant Kelly is sued in his individual and official capacities.

30. At all times relevant herein, Defendant Jason Ragoo ("Ragoo") was an officer, employee, and agent of Defendant The City of New York.

31. At all times relevant herein, Defendant Ragoo was acting within the scope of his employment with Defendant The City of New York.

32. At all times relevant herein, Defendant Ragoo was acting under color of state law.

33. Defendant Ragoo is sued in his individual and official capacities.

34. At all times relevant herein, Defendant Sergeant Ronald Warnett ("Warnett") was an officer, employee, and agent of Defendant The City of New York.

35. At all times relevant herein, Defendant Warnett was acting within the scope of his employment with Defendant The City of New York.

36. At all times relevant herein, Defendant Warnett was acting under color of state law.

37. Defendant Warnett is sued in his individual and official capacities.

38. At all times relevant herein, Defendant Sergeant Michael Elderbaum ("Elderbaum") was an officer, employee, and agent of Defendant The City of New York.

39. At all times relevant herein, Defendant Elderbaum was acting within the scope of his employment with Defendant The City of New York.

40. At all times relevant herein, Defendant Elderbaum was acting under color of state law.

41. Defendant Elderbaum is sued in his individual and official capacities.

42. At all times relevant herein, Defendants John/Jane Doe # 1 - 20 were supervisors, officers, employees, and/or agents of Defendant The City of New York.

43. At all times relevant herein, Defendants John/Jane Doe # 1 - 20 were acting within the scope of their employment with Defendant The City of New York.

44. At all times relevant herein, Defendants John/Jane Doe # 1 - 20 were acting under color of state law.

45.     Defendants John/Jane Doe # 1 - 20 are sued in their individual and official capacities.

46.     The names John/Jane Doe # 1 - 20 are fictitious, their true names being unknown to Plaintiff at this time.

## STATEMENT OF FACTS

47.     On August 26, 2013, Ms. McIntosh was lawfully present at or near 149-29 34th Avenue, Flushing, New York ("Subject Location").

48.     Ms. McIntosh resided at the subject location with her then-boyfriend, Defendant Kristopher Vecchio.

49.     On the date of incident, Ms. McIntosh was four feet and ten inches tall. She weighed 100 pounds.

50.     On the date of incident Vecchio was five feet and nine inches tall. He weighed 180 pounds.

51.     On that date, Vecchio, without justification, stabbed Ms. McIntosh in her right thigh with a pair of scissors.

52.     Ms. McIntosh called 911, and was chased out of the Subject Location by Vecchio.

53.     Once outside, Vecchio tackled Ms. McIntosh, got on top of her, and began beating her and slamming her body against the ground.

54.     Upon information and belief, Defendants Taylor, Chen, Yi, Javed, Kelly, and John/Jane Doe # 1 – 20 (collectively "Arresting Defendants") arrived at the Subject Location and observed Vecchio on top of Ms. McIntosh beating her and slamming her body against the ground.

55. The Arresting Defendants also observed Ms. McIntosh scratching and biting Defendant Vecchio in an attempt to protect herself and prevent further assault and battery.

56. The Arresting Defendants removed Vecchio from on top of Ms. McIntosh.

57. At the Subject Location, the Arresting Defendants interviewed Ms. McIntosh and she explained to the Arresting Defendants how Vecchio had attacked her.

58. Ms. McIntosh showed the Arresting Defendants the scissors used to stab her in her thigh, as well as the numerous injuries across her entire body. She also told the Arresting Defendants that there were numerous other illegal weapons that Vecchio had stored at the Subject Location.

59. At the scene, Vecchio denied having assaulted or stabbed Ms. McIntosh. He also denied having any illegal weapons in the Subject Location.

60. Ms. McIntosh told the Arresting Defendants where the weapons were located in the Subject Location.

61. Despite, *inter alia*, having seen Defendant Vecchio on top of and attacking Ms. McIntosh; Ms. McIntosh acting in self-defense; the clear evidence of Ms. McIntosh having been stabbed by Defendant Vecchio as well as Ms. McIntosh's other injuries; and knowledge of illegal weapons within the Subject Location, the Arresting Defendants placed Ms. McIntosh under arrest.

62. Given the foregoing, the Arresting Defendants knew or should have known that Vecchio was lying to them.

63. The Arresting Defendants also refused to collect as evidence, *inter alia*, the scissors used to stab Ms. McIntosh. They also refused to look for the other weapons located at the Subject Location.

64. The Arresting Defendants failed to follow NYPD protocol in securing the illegal weapons within the Subject Location.

65. Ms. McIntosh's arrest was without probable cause.

66. Upon information and belief, Ms. McIntosh's arrest was approved at the Subject Location by Defendant Chen.

67. Ms. McIntosh was taken by ambulance to the hospital. During her time in the ambulance, she was handcuffed to the stretcher.

68. Upon information and belief, Ms. McIntosh was accompanied to the hospital by Defendant Kelly.

69. Once at the hospital, Ms. McIntosh was placed in shackles and paraded by the Defendant Kelly around the hospital.

70. Ms. McIntosh told Defendant Kelly that she was having difficulty breathing and suffered from panic attacks.

71. Despite this knowledge, and against the protestations of the doctor at the hospital and Ms. McIntosh, Ms. McIntosh was denied medical care and removed from the hospital by Defendant Kelly and taken to a police precinct

72. Defendant Kelly threatened Ms. McIntosh with extra time in custody should she continue to demand medical attention, and told her that she could come back to the hospital if she wished after being processed and seen by a judge.

73. From the police precinct, Ms. McIntosh was transferred to Queens Central Booking.

74. At Queens Central Booking, Ms. McIntosh complained that she was having difficulty breathing, did not feel well, and was suffering from panic attacks. She also explained that the Arresting Defendants had refused to allow her to receive medical care while at the hospital.

75. She also told the Queens Central Booking desk sergeant that the Arresting Defendants refused to collect any evidence from the Subject Location, including the scissors used to stab her, as well as the other illegal weapons Vecchio had stored at the Subject Location.

76. Someone from Queens Central Booking contacted the members of the NYPD at the 109th Precinct and demanded that they return to Queens Central Booking to take Ms. McIntosh back to the hospital, and also reported that the Arresting Defendants failed to collect evidence and illegal weapons from the Subject Location.

77. A member of the 109th Precinct came to Queens Central Booking and transported Ms. McIntosh back to the police precinct.

78. Once back at the police precinct, Ms. McIntosh was held for hours and interrogated by, upon information and belief, Defendants Ragoo and Elderbaum about various things, including the illegal weapons located at the Subject Location.

79. At some point during this time at the precinct, Ms. McIntosh learned that members of the 109th Precinct had gone to the Subject Location during this interrogation and recovered numerous illegal guns from the Subject Location.

80. During the entirety of this time at the police precinct, Ms. McIntosh pleaded with Defendants Ragoo and Elderbaum for medical attention as she was having difficulty breathing, did not feel well, and was suffering from panic attacks, but he refused and ignored her pleas.

81. At some point, Ms. McIntosh was transferred back to Queens Central Booking, where she was held until she was transferred to the pens in the Queens criminal courthouse to be arraigned.

82. Before having a chance to be arraigned, Ms. McIntosh was transferred back to Queens Central Booking and was told that arraignments had ended.

83. While being held in Queens Central Booking, Ms. McIntosh begged, upon information and belief, Defendant Warnett for medical attention as she was having difficulty breathing, did not feel well, and was suffering from panic attacks.. However, Defendant Warnett ignored her pleas for hours.

84. Finally, Defendant Warnett called the 109th Precinct to send a car to take Ms. McIntosh to the hospital.

85. Ms. McIntosh was taken back to the hospital.

86. Back at the hospital, the doctor who had previously seen Ms. McIntosh angrily told the transporting officer that Defendant Kelly should have listened in the first place and not removed Ms. McIntosh from the hospital.

87. After being treated, Ms. McIntosh was transferred back to the police precinct and then to Queens Central Booking.

88. At some point, the Arresting Defendants collected two pairs of scissors not used to stab Ms. McIntosh from the Subject Location, despite Ms. McIntosh's identification of the pair of scissors that Vecchio used to stab Ms. McIntosh.

89. At some point, the Arresting Defendants spoke with the Queens County District Attorneys' Office, individually and collectively lying to the Queens County District Attorney's Office that Ms. McIntosh had violated New York Penal Law §§ 120.00(1) and 240.26(1).

90. Upon information and belief, the Arresting Defendants told the Queens County District Attorney's Office that they did not know what Ms. McIntosh had been stabbed with.

91. Upon information and belief, the Arresting Defendants told the Queens County District Attorney's Office that they did not know if either pair of scissors had been used to stab Ms. McIntosh.

92. Based on these fabricated allegations, the Queens County District Attorney's Office forwarded to Defendant Taylor a Criminal Court Complaint.

93. The Criminal Court Complaint was reviewed and then signed by Defendant Taylor.

94. When reviewing and signing the Criminal Court Complaint, Defendant Taylor knew the allegations contained therein to be false.

95. Further, Arresting Defendants knew from observing and investigation, that any injuries sustained by Vecchio had been a result of Ms. McIntosh acting in self-defense.

96. The executed Criminal Court Complaint was then forwarded by Defendant Taylor to the Queens County District Attorney's Office.

97. Legal process was issued against Ms. McIntosh, and Ms. McIntosh was subsequently arraigned.

98. During the pendency of the criminal proceeding, the Arresting Defendants forwarded false evidence to the Queens County District Attorney's Office, *inter alia*, arrest reports, complaint reports, false statements, and property vouchers.

99. During the pendency of the criminal proceeding, the Arresting Defendants pressured the Queens County District Attorney's Office to continue its prosecution of Ms. McIntosh.

100. They also took actions which would undermine Ms. McIntosh's defense of self-defense by, *inter alia*, collecting unrelated evidence to the assault against her and submitting it to the Queens County District Attorney's Office, as well as destroying DNA evidence by failing to collect the scissors used against Ms. McIntosh.

101. Because of the actions of the Arresting Defendants in, among other things, failing to collect evidence, destroying evidence, and providing false information to the Queens County District Attorneys' Office, Vecchio was not even prosecuted for the stabbing and assault of Ms. McIntosh.

102. Ms. McIntosh suffered damage as a result of Defendants' actions. Ms. McIntosh was deprived of liberty, denied medical attention, suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983*

103. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

104. Defendants, by their conduct toward Ms. McIntosh as alleged herein, violated Ms. McIntosh's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

105. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*Unlawful Stop and Search*

106. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

107. Arresting Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Ms. McIntosh without reasonable suspicion.

108. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

## THIRD CAUSE OF ACTION
*False Arrest*

109. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

110. Arresting Defendants violated the Fourth and Fourteenth Amendments because they arrested Ms. McIntosh without probable cause.

111. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

### FOURTH CAUSE OF ACTION
*Denial of Substantive Due Process*

112. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

113. Arresting Defendants created false evidence against Ms. McIntosh.

114. Arresting Defendants forwarded false evidence to prosecutors in the Queens County District Attorney's Office.

115. In creating false evidence against Ms. McIntosh, and in forwarding false evidence to prosecutors, Arresting Defendants violated Ms. McIntosh's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

116. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

### FIFTH CAUSE OF ACTION
*Malicious Abuse of Process*

117. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

118. Arresting Defendants issued and/or caused to be issued legal process to place Ms. McIntosh under arrest.

119. Arresting Defendants arrested Ms. McIntosh in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to express their disapproval for

her interracial relationship with Vecchio; to cover up their and/or their co-worker's friendship with Vecchio; and to cover up Vecchio's attack on Ms. McIntosh.

120. Arresting Defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the Queens County District Attorney's Office and continuing to participate in the prosecution of Ms. McIntosh.

121. Arresting Defendants acted with intent to do harm to Ms. McIntosh without excuse or justification.

122. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

### SIXTH CAUSE OF ACTION
*Malicious Prosecution*

123. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

124. Arresting Defendants initiated the criminal proceedings against Ms. McIntosh by issuing and/or causing to be issued legal process against Ms. McIntosh.

125. Arresting Defendants lacked probable cause to commence the criminal proceedings against Ms. McIntosh.

126. Arresting Defendants' actions were motivated by actual malice.

127. The criminal proceeding was terminated in Ms. McIntosh's favor.

128. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

## SEVENTH CAUSE OF ACTION
*Deliberate Indifference to Medical Needs*

129. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

130. Defendants Kelly, Ragoo, Elderbaum, and Warnett were aware that Ms. McIntosh had a serious medical condition the treatment of which required medical treatment.

131. Defendants Kelly, Ragoo, Elderbaum, and Warnett prevented Ms. McIntosh from obtaining medical attention, with deliberate indifference to her medical needs, in violation of the Fourteenth Amendment.

132. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

## EIGHTH CAUSE OF ACTION
*Conspiracy under 42 U.S.C. § 1983*

133. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

134. Arresting Defendants and Vecchio jointly participated in the deprivation of Ms. McIntosh's constitutional rights as set forth herein.

135. Arresting Defendants and Vecchio conspired in the deprivation of Ms. McIntosh's constitutional rights by collectively lying about Ms. McIntosh's actions and conduct, and intentionally withholding and/or destroying exculpatory evidence in order to support their fabricated version of the events.

136. As a result of Arresting Defendants' malicious efforts to damage Ms. McIntosh, Ms. McIntosh's liberty was restricted, and Ms. McIntosh was restrained, subjected to handcuffing, and, among other things, falsely arrested, strip searched, and prosecuted.

137. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

NINTH CAUSE OF ACTION
*Section 12132 of the Americans with Disabilities
Act of 1990, As Amended ("ADA")*

138. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

139. Ms. McIntosh suffers from panic disorder, a disorder that limits Ms. McIntosh's ability to, *inter alia*, breathe and speak. Accordingly, Ms. McIntosh qualifies as a person with an impairment that substantially limits one or more of major life activities. Ms. McIntosh's condition therefore constitutes a protected disability under the ADA.

140. The above-described conduct amounts to discrimination against Ms. McIntosh as it violates Section 12132, which states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

141. Pursuant to Section 12121, Defendant The City of New York is a "public entity" subject to the provisions of the ADA.

142. Defendant The City of New York's, through its employees and agents, intentional or otherwise deliberate refusal to accommodate Ms. McIntosh's needs, in light of their knowledge of Ms. McIntosh's physical and mental conditions, violated the ADA.

143. Instead of accommodating Ms. McIntosh's needs, Defendant The City of New York, through its employees and agents, denied Ms. McIntosh services and programs available to others that could have prevented this miscarriage of justice, as well as Ms. McIntosh's pain and suffering.

144. The failure to accommodate Ms. McIntosh's disabilities was intentional and/or deliberately indifferent to Ms. McIntosh's rights under Chapter 126 of the ADA and was the proximate cause of their injuries.

145. As a consequence of Defendant The City of New York and its employee's discriminatory treatment and lack of accommodation, Ms. McIntosh suffered serious injuries. Ms. McIntosh is, thus, entitled to damages.

TENTH CAUSE OF ACTION
*§ 504 of the Rehabilitation Act*

146. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

147. Ms. McIntosh qualifies as a person with an impairment that substantially limits one or more major life activities. Ms. McIntosh's disability, therefore, constitutes a protected disability under the Rehabilitation Act.

148. Defendant The City of New York's intentional refusal to accommodate Ms. McIntosh's physical and mental condition was tantamount to a denial of services and programs

available to others that could have prevented this miscarriage of justice, as well as Ms. McIntosh's pain and suffering. The failure to accommodate the foregoing disabilities was intentional and/or deliberately indifferent to Ms. McIntosh's rights under § 504 of the Rehabilitation Act, and bore a causal link to Ms. McIntosh's subsequent injuries.

149. As a consequence of Defendant The City of New York and its employee's discriminatory treatment and lack of accommodation, Ms. McIntosh suffered serious injuries and is entitled to damages.

## ELEVENTH CAUSE OF ACTION
*Failure to Intervene*

150. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

151. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

152. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

153. As a direct and proximate result of this unlawful conduct, Ms. McIntosh sustained the damages alleged herein.

## TWELFTH CAUSE OF ACTION
*Monell*

154. Ms. McIntosh repeats and re-alleges each and every allegation as if fully set forth herein.

155. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Ms. McIntosh.

156. Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

157. Defendant The City of New York has procedures that encourages the denial of medical attention to arrestees in its custody.

158. Police officers routinely deny medical attention to arrestees in their custody, refusing or ignoring their pleas for medical attention.

159. Police officers routinely threaten arrestees in their custody with extra time in custody to prevent them from obtaining the medical attention they require.

160. Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent such abuse from occurring.

161. The instant matter is not an isolated event. Defendant The City of New York is aware that its police officers routinely deny medical attention to arrestees. See, e.g., "NYPD has a shot at avoiding millions in payouts if it could see that arrested diabetics get their meds", located at http://www.nydailynews.com/new-york/nypd-shot-avoiding-millions-payouts-arrested-diabetics-meds-article-1.1090629.

162. Defendant The City of New York, at all relevant times, was aware that the individual defendant officers routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

163. Defendant The City of New York, at all relevant times, was aware that the individual defendant officers are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

164. These policies, practices, and customs were the moving force behind Ms. McIntosh's injuries.

## PRAYER FOR RELIEF

WHEREFORE, Ms. McIntosh respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendant officers, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
February 13, 2015

/s/
Gregory P. Mouton, Jr., Esq.
Law Office of Gregory P. Mouton, Jr., LLC
*Attorney for Plaintiff*
305 Broadway, 14th Floor
New York, NY 10007
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com