UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
IMAN MCINTOSH,

              Plaintiff,

  -against-                        **MEMORANDUM AND ORDER**

THE CITY OF NEW YORK; POLICE    14-cv-00051 (FB) (ST)
OFFICER HAROLD TAYLOR;
SERGEANT HONG CHEN; POLICE
OFFICER CHONG YI; POLICE
OFFICER JAWAD JAVED; POLICE
OFFICER JAMES KELLY; POLICE
OFFICER JASON RAGOO; SERGEANT
RONALD WARNETT; SERGEANT
MICHAEL ELDERBAUM; and
JOHN/JANE DOE #1-20,

              Defendants.
---------------------------------------------------x

*Appearances:*

*For the Plaintiff*:　　　　　　　　　　　*For the Defendants*:
GREGORY PAUL MOUTON　　　　　　KARL J. ASHANTI
Law Office of Gregory P. Mouton, Jr.　　RYAN GLENN SHAFFER
305 Broadway, 14th Floor　　　　　　　The City of New York Law
New York, New York 10007　　　　　　Department
　　　　　　　　　　　　　　　　　　100 Church Street
　　　　　　　　　　　　　　　　　　New York, New York 10007

**BLOCK, Senior District Judge:**

      On the night of August 26, 2013, Iman McIntosh ("Iman" or "McIntosh") fought

with her boyfriend and was subsequently arrested for domestic assault. On September

12, 2013, the charges spawned by this incident were dismissed at the request of the

1

Queens County District Attorney's Office ("DA"). Iman now sues the City of New York ("City") and, individually, eight officers of the New York City Police Department ("NYPD" or "NYCPD"): Police Officers Harold Taylor ("Taylor"), Chong Yi ("Yi"), Jawad Javed ("Javed"), James Kelly ("Kelly"), and Jason Ragoo ("Ragoo"), and Sergeants Hong Chen ("Chen"), Ronald Warnett ("Warnett"), and Michael Elderbaum ("Elderbaum") ("defendant officers").[1] Against the City and the defendant officers (collectively, "defendants"), Iman brings nine claims under 42 U.S.C. § 1983[2]–unlawful search; false arrest; denial of substantive due process; malicious abuse of process; malicious prosecution; deliberate indifference to her medical needs; conspiracy; failure to intervene; and municipal liability[3]--and two claims under Section 504 of the Rehabilitation Act of 1973 ("RA") and Title II of the Americans with Disabilities Act of 1990, as amended in 2008 ("ADA").[4] Having completed discovery, both parties now

---

[1] Iman also sued twenty unnamed officers.

[2] The Second Amended Complaint ("Complaint") titles plaintiff's first cause of action as "42 U.S.C. § 1983." 2nd Am. Compl. at 12. Section 1983, however, "'is not itself a source of substantive rights'"; "'[i]t merely provides a method for vindicating federal rights elsewhere conferred.'" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). It cannot constitute an independent cause of action, as it does in the Complaint. As such, while the Complaint enumerates twelve causes of action, this Court counts only eleven cognizable claims.

[3] Because the related claims do not appear sequentially, they are identified in accordance with their number in the Complaint, not in the order in which they are analyzed, throughout this Memorandum and Order.

[4] In the Complaint, the RA forms the basis of one claim, the ADA the basis of another. In this proceeding, the analysis of these two substantively similar laws is

move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Iman's motion is DENIED, defendants' motion is GRANTED.

# I

The following undisputed material facts[5] are taken from the parties' submissions, including their Local Rule 56.1 Statements. The Court deems as undisputed only those factual assertions, advanced by one party, which are supported by citations to the record and are not controverted by the other party and which both parties acknowledged as such at oral argument. *See* FED. R. CIV. P. 56(e)(3) (authorizing court to "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it"); *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement" and "must be satisfied that the

---

conjoined, as the sole difference between them–the RA requires that the relevant entity be a recipient of federal funds, *Rothschild v. Grottenthaler*, 907 F.2d 286, 289–90 (2d Cir. 1990)–is not disputed.

[5] A number of facts are disputed, from the precise degree of medical attention plaintiff received to the extent to which every defendant officer participated in the various wrongs alleged in plaintiff's two pleadings. At oral argument, for example, plaintiff again maintained that the defendant officers saw Vecchio straddling her prostate form and slamming her body to the ground, an allegation that defendants again deny. As shown below, however, none of these discrepancies affect the outcome of the motions presently before the Court.

citation to evidence in the record supports the assertion.").

A. **Undisputed Facts**

During the summer of 2013, Iman lived with Kristopher Vecchio ("Vecchio"), her then-boyfriend, and her son at 149-29 34th Avenue, Apartment 2, Queens, New York ("Apartment"). At the time, Iman worked for Brink's Global Services. On August 26, 2013, Iman left work at approximately 7:00 p.m. and went to dinner with a friend. At around 9:45 p.m., Iman took a cab directly home.

Later that night, Vecchio and Iman fought with fists, nails, and scissors. In the midst of this altercation, Vecchio called 911 and reported that Iman, having been drinking, had hit and bit him, resulting in injuries to his face and chest. The dispatcher classified the matter as both an assault in progress and a domestic incident.

Five officers–Taylor, Chen, Yi, Javed, and Kelly–were dispatched to the Apartment; they had been informed of these classifications as well as the substance of When Chen and Taylor arrived, Vecchio expanded upon his telephoned account and accused Iman of punching and scratching him and drawing blood. At the same time, the defendant officers noticed and noted plaintiff's own injuries, including lacerations on her right leg. Based on the 911 call, these additional statements, and his observations of Vecchio's physical injuries, such as fresh cuts and bite marks, Taylor, with Chen's approval, arrested and searched Iman. Subsequently, as both parties agreed at oral argument, Vecchio was also arrested.

Because Iman had sustained obvious lacerations and claimed to be suffering from

4

a panic attack, Taylor and Kelly first took Iman to New York-Presbyterian Hospital in Queens ("Hospital"). Handcuffed, Iman was referred to the Hospital's Urgent Care Center and treated for the physical injuries sustained during her fight with Vecchio. As to this hospital stay, "[t]here is no indication anywhere in plaintiff's medical records that she actually was taken out of the hospital against medical advice." Defs.' L.R. 56.1 State. ¶ 20; *see also* Pl.'s Resp. to Defs.' L.R. 56.1 State. 11 (admitting allegations set forth in paragraph 20). Upon her release, within hours of her arrival at the Hospital, Iman was first transported to the local precinct and then to Queens Central Booking ("QCB").

Shortly afterwards, plaintiff was returned to the precinct and placed in a holding cell. During this time, Ragoo and Elderbaum questioned Iman about her fight and relationship with Vecchio. After this questioning, Iman was sent back to QCB. While at QCB, Iman requested medical attention from, among others, Warnett. On the same day, she was again taken to the Hospital for further evaluation. In regards to this second visit, as with plaintiff's first, "[t]here is no indication anywhere in plaintiff's medical records that she actually was taken out of the hospital against medical advice." Defs.' L.R. 56.1 State. ¶ 20; *see also* Pl.'s Resp. to Defs.' L.R. 56.1 State. 11 (admitting allegations set forth in paragraph 20). Afterward, plaintiff was returned to QCB.

Based on Taylor's paperwork and observations, a criminal complaint against Iman was filed. Once her case had been docketed by the Criminal Court of the City of New York and the complaint and her criminal history compiled, Iman was arraigned and

released. In total, Iman spent slightly less than forty-eight hours in custody. On September 12, 2013, the charges against Iman were dismissed with the DA's consent.

## II

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, a court may not undertake credibility determinations, weigh the evidence, or select amongst competing but legitimate inferences from disputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id.* Nonetheless, unless the nonmoving party "offers some hard evidence showing that its version of the events is not wholly fanciful," summary judgment should be granted to the moving party. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1988).

### A. Probable Cause

Seven of plaintiff's causes of action (individually, "COA," and collectively "COAs")–the second, third, fourth, fifth, sixth, eighth, and eleventh–depend on whether probable cause existed for her arrest. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest" under federal law, a standard "substantially the same as a claim for false arrest under New

York law."[6] *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. "This standard is a fluid one, which does not demand hard certainties but only facts sufficient to establish the sort of fair probability on which reasonable and prudent men, not legal technicians, act." *Thomas v. City of New York*, 562 F. App'x 58, 59 (2d Cir. 2014) (internal quotation marks omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Id.*

For purposes of this determination, only a few uncontested facts matter. As both parties agree, the officers who arrived at the Apartment on August 26, 2013, had been summoned by a 911 call in which a crime had been detailed and a perpetrator identified. As both parties further concur, once there, the officers obtained confirmation of Iman's attack from both the victim, i.e. Vecchio, and the perpetrator, i.e. Iman, and saw indications of physical assault, including fresh cuts and bite marks, on Vecchio's body.

---

[6] The one distinction is "§ 1983's requirement that the tort be committed under color of state law." *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991). That requirement is not in dispute here.

7

These circumstances–a 911 call by a victim and both oral and physical corroboration at the scene–establish probable cause sufficient for an arrest under the Fourth Amendment. *See, e.g.*, *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("'[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness."); *Singer*, 64 F.3d at 119 (holding that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest"); *Hogan v. Buttofocco*, 379 F. App'x 35, 36 (2d Cir. 2010) (finding probable cause for an arrest and a search based on a witness' 911 call and statement to police at the scene).

Seizing on a single caveat in *Singer*, Iman argues that her statements at the scene, in which she argued self-defense and accused Vecchio of gun possession, raised credible doubts to Vecchio's credibility and thus vitiated any such probable cause. *See* 64 F.3d at 119 (holding that probable cause may be vitiated by "circumstances that raise doubts as to the victim's veracity"). But an officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Caldarola v. Calabrese*, 298 F.3d 156, 167–68 (2d Cir. 2002), or "to prove plaintiff's version wrong before arresting him [or her]," *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). He or she is not even "to consider plausible defenses," including self-defense, "offered by a suspect prior to making an arrest," *Arrington v. City of New York*, 628 F. App'x 46 , 49 (2d Cir. 2015), as the Constitution "does not guarantee that only

the guilty will be arrested," *Baker,* 443 U.S. at 145; *see also, e.g., Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 308 (6ths Cir. 2005) (citing *Baker*, 443 U.S. at 145). For this reason, "conflicting accounts between a complainant and the accused do not negate probable cause," *Distefano v. Sedita*, No. 11-CV-1125 (MKB), 2014 WL 349251, at *8 (E.D.N.Y. Jan. 31, 2014), and if any "legal basis for arresting [a] plaintiff[]" exists, probable cause does so too. *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015).

Because the 911 call, coupled with the officers' observations and Vecchio's later statements at the scene, provided a legal basis for plaintiff's arrest, Iman's statements at the scene could not negate the defendant officers' probable cause for doing so. *See, e.g.*, *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (stating that it "does it matter that an investigation might have cast doubt upon the basis for the arrest"); *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) (noting that an officer's function is to "apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence."); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("The fact that an innocent explanation may be consistent with the facts alleged, however, does not negate probable cause."); *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) (requiring police officers to investigate exculpatory statements of the accused before making an arrest " 'would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me'" (quoting *Criss v.*

*City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988))).[7]

Thus, plaintiff's claim for false arrest (third COA) fails as a matter of law. Because there was probable cause for plaintiff's arrest, six of plaintiff's other COAs must also be dismissed:

- ***Unlawful stop and search*** (Second COA), *see, e.g.*, *United States v. Washington*, 270 F. App'x 26, 27 (2d. Cir. 2008) ("Because the police had probable cause to arrest him, the handgun and ammunition were admissible as the result of a search incident to arrest.");

- ***Denial of substantive due process*** (Fourth COA), *see, e.g.*, *Jimenez v. City of New York*, No. 14-cv-2994 (SAS), 2015 WL 5638041, at *7 (S.D.N.Y. Sept. 24, 2015); *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015) (claim based on substantive due process requires court to consider whether probable cause to

---

[7]At oral argument, plaintiff brought to the Court's attention one more case, *Bullard v. City of New York*, 240 F. Supp. 2d 292 (S.D.N.Y. 2003). *Bullard*, however, does not support plaintiff's position. First, the procedural posture is wholly different: while the present motion are governed by Rule 56, the court in *Bullard* was bound by Rule 12(b)(6). To survive a Rule 56 attack, a plaintiff must provide more than a scintilla of evidence for his or her allegations, but to withstand Rule 12, no such proof is necessary. *Compare* FED. R. CIV. P. 56, *with* FED. R. CIV. P. 12. Second, the *Bullard* court relied on *Singer*'s caveat. *Bullard,* 240 F. Supp. 2d at 298. As this section has shown, this exception is inapplicable to the present dispute based on any number of cases. Lastly, per *Bullard*, while *"*a report of a crime alone will not necessarily establish probable cause,. . . [p]robable cause can also be established by information from an eye witness 'who it seems reasonable to believe is telling the truth.'" *Id.* As the uncontroverted facts here show, Vecchio's account was substantiated by the officers' own observations at the scene. The officers thus had, as *Bullard* alone required, "'independent evidence to support at least some of the victim's assertions.'" *Id.* (quoting *Marin v. Viggiani*, No. 92 Civ. 3836 (LMM), 1993 WL 404098, at *6 (S.D.N.Y. Oct. 5, 1993)).

arrest existed); *Anderson v. Larson*, 327 F.3d 762, 769–70 (8th Cir. 2003) (holding that an investigation, arrest, and prosecution were not violative of substantive due process as they were supported by probable cause);

- ***Malicious abuse of process*** (Fifth COA), *Irish v. City of New York*, No. 09 Civ. 5568 (RMB), 2010 WL 5065896, at *6 (S.D.N.Y. Dec. 6, 2010) (holding that probable cause to arrest "negates a claim for abuse of process); *accord Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 249 (E.D.N.Y. 2011);

- ***Malicious abuse of prosecution*** (Sixth COA), *see, e.g.*, *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *Coyle v. Coyle*, 354 F. Supp. 2d 207, 213 (E.D.N.Y. 2005);

- ***Conspiracy*** (Eighth COA), *see, e.g.*, *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (holding that a § 1983 conspiracy claim cannot survive absent the infliction of an unconstitutional injury); *Singer*, 63 F.3d at 119 ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.");[8] and

- ***Failure to intervene*** (Eleventh COA), *see, e.g.*, *Ladoucier v. City of New York*,

---

[8] Further support for this conclusion comes from the intracorporate conspiracy doctrine. Per this policy, "the officers, agents, and employees of a single corporate entity," like the City, "each acting within the scope of [his or] her employment, are legally incapable of conspiring together." *Little v. City of New York*, 487 F. Supp. 2d 426, 441–42 (S.D.N.Y. 2007) (internal quotation marks omitted). Although an exception exists where individuals are "motivated by an independent personal stake in achieving the corporation's objective," *Id.* at 442, Iman has made no such allegation. Consequently, even in the absence of probable cause, summary judgment for defendants on this claim would be warranted.

11

No. 10-CV-5089, 2011 WL 2206735, at *4 (S.D.N.Y. June 6, 2011) (recognizing that failure to intervene claim requires, inter alia, that officers failed to intervene to prevent another officer's constitutional violation); *Tavares v. City of New York*, No. 08-CV-3782, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010) (same).

### B. Remaining Claims

Plaintiff's four remaining claims either do not depend on the existence of probable cause or compel a distinct analysis.

#### 1. *Deliberate Indifference (Seventh COA)*

Attacking defendants for overlooking her allegedly perilous medical state, plaintiff asserts a claim for deliberate indifference. The constitutional rights of a pretrial detainee, like Iman, held in state custody flow from the procedural and substantive due process guarantee of the Fourteenth Amendment.[9] *Bell v. Wolfish*, 441 U.S. 520, 536 (1979); *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009); *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To establish an unconstitutional denial of medical care in violation of the Fourteenth Amendment, a pretrial detainee must show that he or she had a serious medical condition and that it was met with deliberate indifference. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

---

[9] In contrast, the rights of inmates flow from the Eighth Amendment. Despite their different constitutional anchors, courts similarly analyze the right to medical care for pretrial detainees and inmates. *See, e.g.*, *Hare v. City of Corinth, Miss.*, 74 F. 3d 633, 643 (5th Cir. 1996). Because the case law is thus interchangeable, both Eighth Amendment and Fourteenth Amendment cases are cited below.

"Mere medical malpractice is not tantamount to deliberate indifference." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

There is no evidence of callous indifference. On August 26 and 27, defendants twice took plaintiff from QCB to the Hospital. Even if plaintiff were not treated with the greatest speed, she was evidently provided with essential medical care soon after her every complaint. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("'The essential test [for purposes of a medical indifference claim] is one of medical necessity and not one simply of desirability.'" (quoting *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981))). The uncontested evidence thus shows that Iman received minimally effective treatment for her apparent ills throughout her brief incarceration and not silent and knowing inaction. Such a record is enough to foreclose plaintiff's claim.[10]

### 2. *ADA (Ninth COA) & RA (Tenth COA)*

Iman next faults defendants for disability discrimination. In order to state a claim under section 504 of the RA, the plaintiff must show that she (1) has a disability for purposes of the Act; (2) that she was "otherwise qualified" for a benefit that she was denied; (3) that she was denied the benefit solely because of her disabilities; and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc.*, 246 F.R.D. 432, 440 (S.D.N.Y. 2007). Under Title II

---

[10] To the extent plaintiff predicates this claim on her allegedly improper removal from the Hospital, that argument too fails. As defendants correctly note, the medical record reveals the opposite. Defs.' L.R. 56.1 State. ¶¶ 21–22.

of the ADA, the plaintiff must establish that she (1) is a qualified individual with one or more disabilities; (2) the defendant is subject to the ADA; and (3) she was denied the opportunity to either participate in, or to benefit from the defendants' services, programs, or activities or were otherwise discriminated against because of plaintiff's one or more disabilities. *United Spinal Ass'n v. Bd. of Elections in City of New York*, 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). "'Whether suit is filed under the . . . [RA] or under the . . . [ADA], the substantive standards for determining liability are the same.'" *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 286 (2d Cir. 2009) (quoting *McDonald v. Commonwealth of Pa., Dep't of Pub. Welfare*, 62 F.3d 92, 95 (3d Cir. 1995)).

Fatally for both her disability claims, plaintiff does not provide any evidence demonstrating that she was discriminated against because of her disability. At worst, plaintiff's medical needs were negligently attended, but the ADA (and, by extension, the RA) is not violated by a prison or jail failing to attend to its disabled prisoners' medical needs. *See Lincoln CERCPAC v. Health & Hosps. Corp.*, 147 F.3d 165, 168 (2d Cir. 1998) ("[T]he disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided."); *see also, e.g.*, *Rodriguez by Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) (observing that the ADA concerns itself with "'the individual services offered'" and "not the 'amorphous objective of adequate health care'" (quoting *Alexander v. Choate*, 469 U.S. 287, 303 (1985))); *Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir. 1998) (holding

that plaintiff's challenge to the "substance of the services provided to him through [the Vocational Educational Services for Individuals with Disabilities]" did not state a claim under the ADA). Instead, for an ADA or RA claim to be cognizable, the relevant institution must maltreat an individual due to that person's disability, whether real, perceived, or documented. In this case's record, no proof for such a motive can be detected, and no demonstration of how plaintiff was discriminated against or how she was denied access to a program, service, or activity due to any perceived or real disability has been made.

### 3. **Monell** *Liability (Twelfth COA)*

In her final claim, plaintiff seeks *Monell* liability against the City. Under *Monell*, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee," *Id.; see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997), and a municipal policy must cause an underlying constitutional violation be actionable under *Monell, see, e.g.*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Both because plaintiff has offered no evidence of any specific "custom, policy, or usage" from which any type of constitutional harm to her flowed and because the Court has found no violation of a single constitutional right by

defendants, *Monell* liability cannot now attach to the City.

## III

For the foregoing reasons, Iman's motion is DENIED, and defendants' motion is GRANTED.[11] Accordingly, the Complaint is DISMISSED.

**SO ORDERED**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 3, 2017

---

[11] Due to this order, plaintiff's motion to strike defendants' answer is denied as moot.